## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**JOHN A. JAMES**
63800 State Rd. 331
South Bend, IN  46614

            Plaintiff

and

**AARON TIFFANY**
203 Par Blvd.
Bristol, IN  46507

            Plaintiff

and

**CHRISTOPHER KOPF**
1851 Princeton Dr.
Toledo, OH 43614

            Plaintiff

        Plaintiffs,

v.

**NORFOLK SOUTHERN RAILWAY
COMPANY a/k/a NORFOLK
SOUTHERN CORPORATION**
3 Commercial Place
Norfolk, VA  23510-9250

and

Case No.: 3:19-cv-1498

Judge

**COMPLAINT**

E.J. Leizerman (0011300)
E.J. Leizerman & Associates, LLC
3450 W. Central Avenue, Suite 328
Toledo, OH 43604
Phone: (419) 243-1010
Facsimile: (419) 243-8200
ej@leizerman.com

Attorneys for Plaintiffs

1

|  | ) |
|---|---|
| | ) |
| **BROTHERHOOD OF LOCOMOTIVE** | ) |
| **ENGINEERS AND TRAINMAN,** | ) |
| **independently, or as part of** | ) |
| **controlling or parent entity or** | ) |
| **agent/and INTERNATIONAL** | ) |
| **BROTHERHOOD OF TEAMSTERS** | ) |
| 7061 E. Pleasant Valley Rd. | ) |
| Independence, OH  44131 | ) |
| | ) |
| and | ) |
| **NORFOLK SOUTHERN** | ) |
| **NORTHERN LINES, WHEELING** | ) |
| **AND LAKE ERIE GENERAL** | ) |
| **COMMITTEE OF ADJUSTMENT** | ) |
| 2117 West Alto Rd. | ) |
| Kokomo, IN  46902 | ) |
| | ) |
| and | ) |
| | ) |
| **DAVID N. RAY** | ) |
| 20850 Pinehurst Greens Dr. | ) |
| Estero, FL.  33928-5912 | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

1.      Plaintiffs bring this action against Defendants the **International Brotherhood of Teamsters (IBT)** the **Brotherhood of Locomotive Engineers and Trainmen (BLET)**; and its subdivisions the **Norfolk and Southern Northern Lines Wheeling and Lake Erie General Committee of Adjustment (GCA)**, a subdivision of and acting within the authority of the Brotherhood of Locomotive Engineers and Trainmen; all three of the above union entities will be referred to hereinafter as the **Union** for the purpose of this action.

2

2.     Defendant Union, is the designated union representative within the meaning of, and regulated by, Federal Railway Labor Act, 45 U.S.C.§151, et seq. (hereinafter Railway Labor Act or RLA); and at all relevant times the Union, in compliance with the RLA was Plaintiffs exclusive bargaining agents.

3.     The Defendant Union represented the Plaintiffs, for the purpose of this action, in accordance with the Railway Labor Act 45 U.S.C. §151 et seq. and the applicable Collective Bargaining Agreement.

4.     The Defendant Norfolk Southern Railway Company (NSRC) is engaged in interstate transportation by rail. The NSRC is a railroad carrier within the meaning of 49 U.S.C. §20102 et seq., and as such is a covered employer within the meaning of Federal Railroad Safety Act, 49 U.S.C. §20109.

5.     Defendant David Ray was the arbitrator who acted collusively and in concert with the other named Defendants in depriving Plaintiffs of a fair and impartial arbitration.

6.     At all material times John James, Aaron Tiffany and Christopher Kopf were employees of defendant, Norfolk Southern Railway Company, (NSRC) and were represented by the Union and were their designated union representative in accordance with the mandates of the Railway Labor Act, 45 U.S.C. §151, et seq..

7.     The Plaintiffs John A. James and Aaron Tiffany were both locomotive engineers and conductors operating freight trains; and at all material time qualified as employees within the meaning of the Federal Railroad Safety Act (FRSA), 49 U.S.C. §20109.

8.     Plaintiff Christopher Kopf was a locomotive engineer employed by Defendant NSRC and was represented by the Union which was his designated union representative in accordance with the mandate of the Railway Labor Act 45 U.S.C. §151, et seq..

9.     This Court has subject matter jurisdiction in this case with respect to the NSRC pursuant to the Federal Railroad Safety Act, 49 U.S.C. §20109(d)(3) as well as 29 U.S.C. §185, et seq. and Section 301 of the Taft – Hartley Act without regard to the amount in controversy; and further with respect to all named Defendants as the allegations contained herein do not fall within, nor are affected by, the Railway Labor Act, 45 U.S.C 151 et seq.; 29 U.S.C. §185, et seq. and Section 301 of the Taft – Hartley Act.

10.     Venue is appropriate under 28 U.S.C. § 1391 (b)(2) as a substantial part of the events or omissions giving rise to the claims in the Northern District of Ohio. Venue is also appropriate as the national office for defendant, Brotherhood of Locomotive Engineers and Trainmen is located within the U.S. District Court, Northern District of Ohio, in Independence, Ohio.

## COUNT I
## FRAUD

11.     Plaintiffs James and Tiffany and Kopf adopt by reference and re-alleges each and every allegation set forth in paragraphs 1 through 10 of this Complaint with the same force and effect as if set forth under this cause of action.

12.     At all relevant and material times herein Plaintiff Christopher Kopf was represented by Defendants IBT, and its subdivisions BLET and its subdivision GCA, hereinafter collectively referred to as the Union; and that the Union, in compliance with the RLA had become Plaintiffs exclusive union and bargaining agent.

13.     At all relevant and material times herein Plaintiffs James and Tiffany were represented by Defendants IBT, and its subdivisions BLET and its subdivision GCA, hereinafter collectively referred to as the Union; and that the Union, in compliance with the RLA had become Plaintiffs exclusive union and bargaining agent.

14.     At all relevant times Plaintiffs were disciplined by their employer, NSRC for allegedly disobeying orders from a superior.

15.     The facts specific to the allegations specific to Kopf are pled in detail as part of Count IV herein.

16.     The facts specific to the allegations specific to James and Tiffany are pled in detail as part of Count III herein.

17.     Plaintiffs James, Tiffany and Kopf were all separately required to go to internal company hearings and were subsequently fired by Defendant, NSRC.

18.     In accordance with the provisions of 45 U.S.C. §151 et seq., (RLA) and the Collective Bargaining Agreement the Union appealed the Plaintiff's dismissals to a Public Law Board for arbitration separately for each James, Tiffany and Kopf .

19.    In accordance with the RLA and the Collective Bargaining Agreement (CBA) both NSRC and the Union fraudulently and in collusion agreed upon Defendant David N. Ray.

20.    The facts particular to Plaintiffs James and Tiffany respecting fraud are specifically identified and pled in *Count II Failed Duty of Representation* herein.

21.    The facts particular to Plaintiff Kopf respecting fraud are specifically identified and pled in *Count IV Christopher Kopf* herein.

22.    At all relevant times the Union owed Plaintiffs the Duty of Fair Representation and this duty required that the Union act fairly, impartially, in good faith and without ill will or discrimination while representing Plaintiff with respect to all company charges, disciplines, appeals and arbitration; and that the Union failed in its Duty of Fair Representation to the detriment of the Plaintiff.

23.    Under the terms of the RLA and the CBA, either the railroad or the Union may reject any arbitrator but notwithstanding, both the NSRC and the Union collusively agreed to the arbitrator, David N. Ray, as arbitrator separately for all three Plaintiffs arbitrations; and knowing his background as past Vice President of Labor Relations, or similar position; and the likelihood of pensions benefits or possession of stock in NSRC, or related corporation for the Defendant, NSRC.

24.    The Plaintiffs were never told of David N. Ray's past relationship and background with the Defendant, NSRC.

25.    Further, on information and belief David N. Ray not only possessed a bias in favor of NSRC, evidenced by his past position with NSRC, but maintained an

undisclosed conflict of interest with the existence of pension and retirement benefits and stock holdings with Defendant NSRC or related corporation for Defendant NSRC.

26.    Further, that NSRC and the Union knew of said bias and conflict of interest; and as such acted in bad faith, collusively and with corruption and fraud and in concert with each other, as well as with David N. Ray against the interests of the Plaintiffs.

27.    David N. Ray was complicit in participation with the wrongful acts of the other named Defendants; and in addition had a duty to advise the Plaintiffs of the appearance of, or facts that would appear to support, bias; and also of any facts reflecting any conflicts of  interest; and that David N. Ray failed in such duty to the detriment of Plaintiffs.

28.    Further, Plaintiff's claim that each and every named Defendant did in fact know of, rely upon, and benefit from said bias and conflict of interest in its acting in collusion, conspiracy, fraud or corruption to the detriment of Plaintiffs.

29.    The above mentioned trade-offs would favor the appeals which came from divisions (locals) whose local chairman would vote for Dewayne Dehart to be General Chairman and would look the other way in "quietly" agreeing to the denials of more meritorious appeals from division (locals) whose local chairman do not vote for said General Chairman

30.    Plaintiffs claim that NSRC, the Union and specifically the General Chairman Dewayne Dehart, additionally benefitted from such collusion, fraud and corruption in, amongst other things, the trading off of appeals in arbitration which

were more meritorious than others, so that less meritorious appeals would be won and permitting more meritorious appeals to be lost. The above mentioned trade-offs would favor the appeals which came from divisions (locals) whose local chairman would vote for Dewayne Dehart to be General Chairman and would look the other way in "quietly" agreeing to the denials of appeals from division (locals) whose local chairman do not vote for him.

31.    Plaintiff claims that the acts stated and pled herein, by all named Defendants, were acts in concert with each other that amounted to a scheme and conduct rising to the level of corruption, bad faith, collusion and fraud; including representation by the Union that was arbitrary and with hostility and bad faith against Plaintiffs; and that by such conduct Plaintiffs were denied fair representation and a fair hearing and disposition of disciplinary charges in violation of the duties owed to him by all named Defendants.

32.    Further, Plaintiffs claim that each and every named Defendant did in fact know of, rely upon, and benefit from said bias and conflict of interest in its acting in collusion, conspiracy, fraud or corruption to the detriment of the Plaintiff.

33.    The Defendants conduct was done for the political benefit of the Union, the corporate benefit of NSRC, and the monetary benefit of David N. Ray.

WHEREFORE, Plaintiffs, each and individually, pray for judgement against the Defendants each and individually for all relief necessary to make them whole, resulting from the injuries, harms, and damages suffered by them as pled including:

- compensatory damages for any economic losses due to Defendants' conduct against all Plaintiffs, including, but not limited to, lost wages

and benefits, both past and future; alternatively to future damages, reinstatement to their prior employment position with all rights, benefits and status as they maintained prior to the events as stated in this complaint.

- expungement and removal of any and all references to the adverse actions related to the Plaintiffs' protected activities described above;

- compensatory damages for emotional distress, suffering, humiliation and embarrassment due to Defendants' conduct;

- punitive damages against each Defendant for fraudulent, malicious, collusive conduct as pled herein;

- special damages for all litigation costs including, but not limited to, expert witness fees and attorney fees;

- Plaintiffs pray for Five Million Dollars ($5,000,000.00) for compensatory damages for each Plaintiff as against Defendants Norfolk Southern Railway Company and the Union separately, and One Million Dollars ($1,000,000.00) for each Plaintiff as against David Ray.

- Plaintiffs pray for punitive damages to and for an amount as permitted by law.

and any further relief the Court of jury deems just and equitable.

## COUNT II
## FAILED DUTY OF FAIR REPRESENTATION

34.     Plaintiffs James and Tiffany and Kopf adopt by reference and re-alleges each and every allegation set forth in paragraphs 1 through 33 of this Complaint with the same force and effect as if set forth under this cause of action.

35.     At all relevant and material times herein Plaintiffs James, Tiffany and Kopf were represented by Defendants IBT, and its subdivisions BLET and its subdivision GCA, hereinafter collectively referred to as the Union; and that the

Union, in compliance with the RLA had become Plaintiffs exclusive union and bargaining agent.

36.     Specific to the allegations herein, on or about July 26, 2017 Plaintiffs, locomotive engineer Aaron Tiffany and conductor John A. James, attempted to accurately report their hours on duty and were charged and subsequently fired for their refusal to misreport their time on duty in accordance with their supervisor's instruction.  The charges against them were that they had misreported by one (1) minute and two (2) minutes respectively.  The Plaintiffs believed to do so would be clearly inaccurate.

37.     On or about July 26, 2017 James and Tiffany were charged with failing to follow Trainmaster Moon's orders; brought to hearing on the charges, and subsequently fired from the defendant NSRC.

38.     In accordance with the provisions of 45 U.S.C. §151 et seq., (RLA) and the Collective Bargaining Agreement the Union separately appealed the Plaintiffs' dismissals to a Public Law Board for arbitration.

39.     In accordance with the RLA and the Collective Bargaining Agreement (CBA) both NSRC and the Union agreed upon Defendant David N. Ray to be the arbitrator in each instance without the knowledge or consent of the Plaintiffs.

40.     At all relevant times the Union owed Plaintiffs the Duty of Fair Representation and this duty required that the Union act fairly, impartially, in good faith and without ill will or discrimination while representing Plaintiffs with respect

to all company charges, disciplines, appeals and arbitration; and that the Union failed in its Duty of Fair Representation to the detriment of the Plaintiffs.

41. Under the terms of the RLA and the CBA, either NSRC or the Union may reject any arbitrator but notwithstanding, both the NSRC and the Union collusively agreed to the arbitrator, David N. Ray, knowing his background as past Vice President of Labor Relations, or similar position, for the Defendant, NSRC.

42. The Plaintiffs were never told of David N. Ray's past relationship and background with the Defendant, NSRC.

43. Further, on information and belief David N. Ray not only possessed a bias in favor of NSRC, evidenced by his past position with NSRC, but maintained an undisclosed conflict of interest with the existence of pension and retirement benefits and stock holdings with Defendant NSRC.

44. Further, that the Union knew of said bias and conflict of interest; and as such acted in bad faith, collusively and with corruption and fraud in concert with Defendants NSRC and David N. Ray against the interests of the Plaintiffs.

45. David N. Ray was complicit in participation with the wrongful acts of the other named Defendants; and in addition had a duty to advise the Plaintiffs of the appearance of, or facts that would appear to support, bias; and also of any facts reflecting any conflicts of interest; and that David N. Ray failed in such duty to the detriment of Plaintiffs.

46.     Plaintiffs state that Defendants David N Ray, NSRC and the Union are liable for all damages prayed for by Plaintiffs attributable to David N. Ray's wrongful conduct, actions or inactions that in anyway resulted in harming Plaintiffs.

47.     Further, Plaintiffs' claim that each and every named Defendant did in fact know of, rely upon, and benefit from said bias and conflict of interest in its acting in collusion, conspiracy, fraud or corruption to the detriment of Plaintiffs.

48.     Plaintiffs claim that NSRC, the Union and specifically the General Chairman Dewayne Dehart, benefitted from such collusion, fraud and corruption in, amongst other things, the trading off of appeals in arbitration which were more meritorious than others, so that less meritorious appeals would be won and permitting more meritorious appeals to be lost; and that this was for the political benefit of the Union, and the corporate benefit of NSRC.

49.     The above mentioned trade-offs would favor the  appeals which came from divisions (locals) whose local chairman would vote for Dewayne Dehart to be General Chairman and would look the other way in "quietly" agreeing to the denials of appeals from division (locals) whose local chairman do not vote for him.

50.     Plaintiffs claim that the acts stated and pled in Count I, by all named Defendants,  were  acts in concert with each other that amounted to acts and conduct rising to the level of corruption, bad faith, collusion, including representation by the Union that was arbitrary and with hostility and bad faith against Plaintiffs; and that by such conduct Plaintiffs were each denied fair representation and a fair hearing

and disposition of disciplinary charges in violation of the duties owed to them by all named Defendants.

51. At the time of the filing of this action, Plaintiffs have exhausted all remedial administrative processes available to them or have resulted in damages that are permanent or irreversible and outside the confines of the Railway Labor Act 45 U.S.C. §151 et seq..

52.    This complaint is filed less than six (6) months after final notice of the Public Law Board arbitration findings and the representation by the Union with respect to Plaintiffs James and Tiffany and involve allegations outside the confines of the Railway Labor Act with respect to Plaintiff Kopf.

WHEREFORE, Plaintiffs, each and individually, pray for judgement against the Union for all relief necessary to make them whole, resulting from the injuries, harms, and damages suffered by them as pled including:

- compensatory damages for any economic losses due to Defendants' conduct against all Plaintiffs, including, but not limited to, lost wages and benefits, both past and future; alternatively to future damages, reinstatement to their prior employment position with all rights, benefits and status as they maintained prior to the events as stated in this complaint.

- expungement and removal of any and all references to the adverse actions related to the Plaintiffs' protected activities described above;

- compensatory damages for emotional distress, suffering, humiliation and embarrassment due to Defendants' conduct;

- special damages for all litigation costs including, but not limited to, expert witness fees and attorney fees;

- Plaintiffs pray for Two Million Dollars ($2,000,000.00) for compensatory damages for each Plaintiff as against the Union;

and any further relief the Court of jury deems just and equitable.

## COUNT III
## FEDERAL RAILROAD SAFETY ACT,
## 49 U.S.C. §20109

53.     Plaintiffs James and Tiffany and Kopf adopt by reference and re-alleges each and every allegation set forth in paragraphs 1 through 52 of this Complaint with the same force and effect as if set forth under this cause of action.

54.      The Plaintiffs John A. James and Aaron Tiffany bring this action against only the Defendant Norfolk Southern Railway Company for violations of the Federal Railroad Safety Act, 49 U.S.C. §20109 (FRSA).

55.     The U.S. Department of Transportation establishes and enforces various safety statutes applicable to the railroad industry. The Federal Railroad Administration (FRA) is an authorized subdivision of the United States Department of Transportation and is the federal agency responsible for regulating the safety of our nation's railroads. The FRA has enacted various safety regulations applicable to the industry; and specifically to railroad employees and carriers.

56.     Locomotive engineers and conductors who operate freight trains are responsible for the lives and safety of our Nation's communities.  Engineers and conductors (crews) must be fully alert and attentive at all times for the safe operation of their train.  With respect to the operation of freight trains and the specific facts

and issues pled herein, it is a serious matter for locomotive crews to be in compliance with the Federal Hours of Service Act 49 U.S.C. §201101 and regulations specifically applicable to work-time restrictions of railroad locomotive crews.

57.    By explicit regulation, the FRA prohibits locomotive crews from the inaccurate reporting of hours of service on duty pursuant to 49 U.S.C. §201101 et seq.; 49 U.S.C. §228. Append 18 A; and 49 U.S.C. §20109(a)(7).

58.    49 U.S.C. §20109(a) was enacted specifically to correct and combat employer's reporting abuses in the rail industry and to prevent the retaliation of employees' reporting of on duty injuries and the accurate reporting of hours of service.

59.    The purpose of the Federal Railway Safety Act (FRSA) is to promote safety in every area of railroad operation, 49 U.S.C. 20101[1], and one of the ways the FRSA does so is by providing whistleblower protection to railroad workers who engage in certain "protected" activity. 49 U.S.C. §20109. In particular, under §20109(a)(2) and (7) of the FRSA it is a protected activity for any employee to be able to "accurately report hours on duty pursuant to Chapter 211".[2]

60.    It is a violation of the FRSA for a railroad employer to "reprimand, or in any other way discriminate against an employee if such discrimination is due, "in whole or in part", to the employee's "protected" activity. 49 U.S.C.§20109. The FRSA rights of employees cannot be overridden or ignored by any railroad policy: "The

---

[1] Any reference to 49 U.S.C. §21101 or 49 U.S.C. 20109 are references to the FRSA as they comprise parts of the Act.
[2] Any reference to Chapter 211 is reference to 49 U.S.C. §21101 et seq. and the "Federal Hours of Service Act" as applicable to freight railroads involved in interstate commerce by rail.

rights and remedies in this section may not be waived by any agreement, policy, form, or condition of employment." 49 U.S.C §20109(h).

61.     Specific to the allegations herein, on or about July 26, 2017 Plaintiffs, locomotive engineer Aaron Tiffany and conductor John A. James, attempted to accurately report their hours on duty and were charged and subsequently fired for their refusal to misreport their time on duty in accordance with their supervisor's instruction.  The charges against them were that they had misreported by one (1) minute and two (2) minutes respectively.  The Plaintiffs believed to do so would be clearly inaccurate.

62.     James and Tiffany were charged with failing to follow Trainmaster Moon's orders; brought to hearing on the charges, and subsequently fired from the defendant NSRC.

63.     In accordance with the requirements and mandates of the FRSA, Plaintiffs James and Tiffany filed their FRSA Complaint with the United States Secretary/Department of Labor and Occupational Health and Safety Administration (OSHA Whistleblower Office) in Chicago, IL. on or about Nov. 26, 2017. Their complaints were filed within 180 days from the date the James and Tiffany became aware of the defendant Railroad's intent to take an adverse or unfavorable personnel actions against them, in accordance with 49 U.S.C. 20109 (d)(2).

64.     The OSHA Whistleblower Office of the U.S. Department of Labor commenced its investigation. James and Tiffany fully cooperated with OSHA's investigation, during which both specifically claimed the NSRC's conduct was in

violation of subsections of 49 U.S.C. §20109 et. seq., of the FRSA, and the NSRC responded to each of those claims. However, as of this date the U.S. Department of Labor has not issued a final decision, and it now has been far more than 210 days since the filing of the original and supplemental FRSA Complaints.

65.    Accordingly, both James and Tiffany have complied with the requirements of Section (d)(3), of the 49 U.S.C. §20109 and they have perfected their statutory right to bring an original action *de novo* in United States District Court for cause regarding violations of the FRSA.

66.    On or about the filing of this actions James and Tiffany will notify the U.S. Department of Labor of their intent to file such an original action in the United States District Court in accordance with 49 U.S.C. §20109(d)(3) and 49 U.S.C. §1982.114.

67.    Pursuant to 49 U.S.C. §20109(d)(3), James and Tiffany now are bringing this original action at law and equity for *de novo* review by the United States District Court for the Northern District of Ohio, which Court has jurisdiction over this action without regard to the amount of controversy.

WHEREFORE, in order to encourage employees to freely report, or refuse to violate, the Federal Railroad Administration safety regulations without fear of any adverse actions being taken against them, thereby fulfilling the purpose of the FRSA (49 U.S.C. §20101) to promote safety in every area of our nation's railroad operations, the Plaintiffs demands a Judgment against NSRC under the FRSA for all relief

necessary to make them whole, resulting from the injuries, harms, and damages suffered by them as pled including:

- compensatory damages for any economic losses due to Defendants' conduct against both Plaintiffs, including, but not limited to, lost wages and benefits, both past and future; alternatively to future damages, reinstatement to their prior employment position with all rights, benefits and status as they maintained prior to the events as stated in this complaint.

- expungement and removal of any and all references to the adverse actions related to the Plaintiffs' protected activities described above;

- compensatory damages for emotional distress and suffering due to Defendants' conduct;

- punitive damages against each Defendant for fraudulent, malicious, collusive conduct as pled herein;

- special damages for all litigation costs including, but not limited to, expert witness fees and attorney fees;

and any further relief the Court of jury deems just and equitable.

## COUNT IV
## CHRISTOPHER KOPF

68.    Plaintiff Christopher Kopf adopts by reference and re-alleges each and every allegation set forth in paragraphs 1 through 67 of this Complaint that are applicable to this specific cause of action with the same force and effect as if set forth under this cause of action.

69.    Previously, when Plaintiff Christopher Kopf had delivered trains to Detroit Edison (DTE), DTE would demand to take possession of Plaintiff's Ohio driver's license and would keep it for approximately 20 minutes before returning it.

18

70.  Plaintiff had objected to this and had told NSRC that he would not continue to let his driver's license be taken out of his possession, as he was concerned, amongst other matters, with identity theft. NSRC ignored his protestations.

71.  Eventually, Plaintiff believing that surrendering his personal driver's license was inappropriate and outside of the Collective Bargaining Agreement and he declined to let his driver's license be taken away from him.

72.  Plaintiff Christopher Kopf was charged with "conduct unbecoming an employee in failing to follow instructions".

73.  Plaintiff's hearing was held on December 18, 2017 and was notified of being discharged on January 4, 2018.  The Union appealed the firing and applied for arbitration.

74.  Plaintiff Christopher Kopf was notified on April 22, 2019 by General Chairman Dewayne Dehart that his hearing before a "Neutral Arbitrator" would be held on Thursday, May 23, 2019 in Estero, Florida.

75.  Shortly thereafter, Christopher Kopf was alerted by a friend that the "Neutral Arbitrator" in Estero, Florida was Defendant David Ray.  It was at that time that it was also confirmed to Plaintiff as to what David Ray's background was, as well as his reputation for favoring his former employer.

76.  On or about May 5, 2019 Plaintiff notified BLET General Chairman DeWayne Dehart of his concern and that he would not accept David Ray. Shortly thereafter on May 21, 2019 Plaintiff was advised that his case was being transferred to the National Mediation Board as specifically provided by the Railway Labor Act,

causing Plaintiff an unjustifiable delay of a minimum of 17 months and ongoing because of the collusion, fraudulent, corrupt and planned use of David Ray causing Plaintiff Christopher Kopf great emotional distress, lost income both past and future, tortious interference with his rights under the RLA 45 U.S.C. 151, et seq..

77.    Plaintiff again incorporates into this count the facts previously alleged with respect to the harm and damages pled.

WHEREFORE, Plaintiff, Christopher Kopf, prays for judgement against the Union, NSRC and David N. Ray and for all relief necessary to make him whole, resulting from the injuries, harms, and damages suffered by them as pled including but not limited to:

- compensatory damages for any economic losses due to Defendants' conduct against Plaintiff, including, but not limited to, lost wages and benefits, both past and future; alternatively to future damages, reinstatement to his prior employment position with all rights, benefits and status as he maintained prior to the events as stated in this complaint.

- expungement and removal of any and all references to the adverse actions related to the Plaintiff's protected activities described above;

- compensatory damages for emotional distress, suffering, humiliation and embarrassment due to Defendants' conduct;

- special damages for all litigation costs including, but not limited to, expert witness fees and attorney fees;

- Plaintiff prays for Two Million Dollars ($2,000,000.00) for compensatory damages for Plaintiff as against each Defendant;

and any further relief, including punitive damages that the Court or jury deems just and equitable.

## COUNT V

### RETALIATION AND BREACH OF UNITED STATES DEPARTMENT OF LABOR REQUIRED AND APPROVED SETTLEMENT AGREEMENT

78.     The Plaintiffs adopt by reference and re-alleges each and every allegation set forth in paragraphs 1 through 77 of this Complaint with the same force and effect as if set forth under his cause of action.

79.     Count V herein is brought solely by Plaintiff John James against Defendant NSRC.

80.     Further, on or about, December 16, 2016, Plaintiff and NSRC settled a separate FRSA suit from a 2014 complaint.

81.     This settlement agreement was brokered with the assistance of OSHA and approved by the U.S. Department of Labor, as required by law.

82.     On or around July 26, 2017 John James was disciplined while working as an employee with NSRC.

83.     Plaintiff had contested the charge and discipline that was assessed against him and the matter went to hearing on Aug. 3, 2017 as stated in Count *III* above.

84.     Plaintiff was sent a letter of discharge from his employment on August 17, 2017.

85.     Plaintiff herein contends, amongst other allegations, that NSRC's 2017 discipline amounted to retaliation for his earlier complaint of 2014.

86.     As part of that Settlement Agreement NSRC agreed:

> …that the discipline issued in connection with the events
> of February 26 and 27, 2014 will be **removed** from James'
> career service record and that such discipline will not be referred
> to or used against James in any further proceedings or matters."
> (emphasis added;)

87.     The Settlement Agreement was approved by OSHA as required by law and "constituted the final order of the United States Secretary of Labor"

88.     Accordingly, as part of the signed Settlement Agreement as stated above, NSRC was to remove all reference to the prior charge and discipline and incident of February 26 and 27, 2014 from his service record.

89.     NSRC  wrongfully, deliberately and maliciously violated the Settlement Agreement by not only failing to expunge the 2014 charge and discipline from his service record, but openly used it against him at the subsequent August 3, 2017 disciplinary hearing from which he is now permanently fired, giving rise to compensatory and punitive damages.

90.     On or about July 26, 2017, NSRC retaliated against John A. James when it charged him with not following directions as stated in *Count III* herein. The 2017 charge was ostensibly for John A. James not following orders, and not working ONE additional minute even though his NSRC records show that he actually did work that ONE minute.

91.     Further, James believes that if OSHA now orders NSRC to rehire James it will only be temporary and a façade; that it will only be a matter of time until NSRC

maliciously retaliates under a new and different pretext and fires him again, making reinstatement an unfeasible remedy.

WHEREFORE, in order to encourage employees to freely report, or refuse to violate, the Federal Railroad Administration safety regulations without fear of any adverse actions being taken against them, thereby fulfilling the purpose of the FRSA (49 U.S.C. §20101) to promote safety in every area of our nation's railroad operations, the Plaintiffs demands a Judgment against NSRC under the FRSA for all relief necessary to make them whole, resulting from the injuries, harms, and damages suffered by them as pled including:

- compensatory damages for any economic losses due to Defendants' conduct against both Plaintiffs, including, but not limited to, lost wages and benefits, both past and future; alternatively to future damages, reinstatement to their prior employment position with all rights, benefits and status as they maintained prior to the events as stated in this complaint.

- expungement and removal of any and all references to the adverse actions related to the Plaintiffs' protected activities described above;

- compensatory damages for emotional distress and suffering due to Defendants' conduct;

- punitive damages against each Defendant for fraudulent, malicious, collusive conduct as pled herein;

- special damages for all litigation costs including, but not limited to, expert witness fees and attorney fees;

and any further relief the Court of jury deems just and equitable.

By their attorney,


*/s/ E.J. Leizerman*
E. J. Leizerman (0011300)
E. J. Leizerman & Associates, LLC
3450 W. Central Avenue
Suite 328
Toledo, Ohio  43606
Phone:      419-243-1010
Facsimile:  419-243-8200