IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

John A. James, *et. al.*,                                    Case No. 19-cv-01498
                                                            Judge James G. Carr
                    Plaintiffs,

                                                            **ORDER**

        v.

Norfolk Southern Railway Company a/k/a
Norfolk Southern Corporation *et. al.*,

                    Defendants.


        This case arises out of Defendant Norfolk Southern Railway Company's decision to

terminate Plaintiffs' employment and Plaintiffs' subsequent challenge to that decision.

        Pending is Plaintiffs' Motion to Stay Motion Practice and to Transfer Case for Assignment

within the Western Division of the Northern District of Ohio. (Doc # 90). Defendant filed an

opposition brief. (Doc # 91). Plaintiffs filed a reply. (Doc # 93). For the following reasons, I deny

Plaintiffs' motion.

                                    **<u>Background</u>**

        Plaintiffs filed this case in 2019. (Doc # 1). The subsequent years of litigation have included

motions to dismiss (Docs # 31, 37) an appeal to the Sixth Circuit[1] (Docs # 33, 74), and motions

---

[1] Plaintiffs voluntarily withdrew an initial notice of appeal within days of its filing. (Doc # 35.) Later, pursuant to the parties' joint request, I granted a dismissal without prejudice as to an unresolved claim. That enabled Plaintiffs to take an appeal to the Sixth Circuit. The Sixth Circuit granted Defendants' motion to dismiss for lack of jurisdiction and denied and dismissed Plaintiffs' appeal. (*See* Doc. 79; *James v. Norfolk Southern Railway Co.*, No. 21-4155, 2022 WL 2037037 (6th Cir. May 5, 2022)). The adjudication of that appeal added approximately five months to the delay in this case. (*See* Doc # 7 (Notice of Appeal, filed 12/6/2021); *see* Doc # 35 (Sixth Circuit Order Denying and Dismissing Appeal, issued 5/6/2021)).

for judgment on the pleadings (Doc # 56). *See James v. Norfolk Southern Railway Co.*, No. 19-1498, 2020 WL 1316513 (N.D. Ohio., Mar. 17, 2020) (granting in part motion to dismiss); *James v. Norfolk Southern Railway Co.*, No. 21-4155, 2022 WL 2037037 (6th Cir. May 5, 2022) (granting Defendants' motion to dismiss and dismissing appeal); *James v. Norfolk Southern Railway Co.*, No. 19-1498, 2020 WL 11423126 (N.D. Ohio, Nov. 16, 2020) (granting in part motion for judgment on the pleadings). Early in 2023, I stayed the deadlines in this case so that the parties could make good faith efforts to settle without spending further resources litigating the merits. (*See* Minute Orders, 1/3/2023, 3/9/2023, 6/20/2023).

On October 2, 2023, I held a video status conference with counsel for both Plaintiffs and Defendant. (*See* Minute Order dated 10/2/2023). I originally scheduled the October 2, 2023 conference as the overly-long-delayed settlement conference. (*See* Minute Order dated 6/20/2023). However, on September 28, 2023, I approved the parties joint request to convert the settlement conference into a regular status conference. (*See* Doc # 87; *and see* 9/28/2023 Order [non-document] granting joint motion).

At the start of the status conference, I inquired why the parties wanted to convert the settlement conference to a status conference and for an update on the status of the case. (*See* Unofficial Transcript (prepared at the Court's request for Court's use only) ("Tr.")). (Tr. at 1).

Plaintiffs' attorney Mr. Leizerman's position was that it would be unfair to require Plaintiffs to attend a settlement conference. [2] (*Id*. at 3). He explained that he already made a written

---

[2] Plaintiffs' reply brief notes that "the Court had not read the Plaintiffs' demand letters." (Doc # 93, PageID # 1464). On June 20, 2023, the Courtroom Deputy issued my standard pre-settlement conference order. That order required, *inter alia*: "Each party must file a brief, ex parte narrative statement *via cm/ecf* no later than ten (10) days prior to the conference (9/22/2023)." (emphasis added).

settlement demand, to which Defendant failed to respond.[3] (*Id*.) Plaintiffs' attorney wanted me to schedule a new date by which Defendant would be required to respond with more detail to Plaintiffs' demand. (*Id*. at 3–4).

---

Plaintiffs are correct. I did not read his *ex parte* settlement statement. Let me explain why.

Having had no recollection of having ever seen an ex parte settlement statement conveying a demand of $10 million, I have checked the docket. There is no entry indicating that Plaintiffs' counsel ever filed, in accordance with my June 20, 2023 minute order, an *ex parte* statement "via CM/ECF."

In checking further with the Courtroom Deputy as to what might have happened, she reviewed her file of emails received from attorneys. She found an October 2, 2023 11:04 am email from Plaintiffs' counsel. Attached to that email is Plaintiffs' *ex parte* settlement statement.

As counsel knows, I have a severe vision impairment that requires me to listen to—not read—anything and everything that I must learn before a proceeding.

In the interim, I had a vigorously scheduled back-to-back-to-back from 8:00am to 3:00pm on October 2.

No attorney can reasonably expect any judge to read- much less download and listen to—something that that lawyer provides nine days and 23 hours late.

 Simply put, neither my staff nor I can be faulted for my failure to know about something Plaintiffs' lawyer failed to file by the deadline.

[3] Plaintiffs argue that I "did not seem to take any issue with the fact that Plaintiffs complied with the Court's order while Defendant ignored it." (Doc # 90, PageID # 865). To be sure, Defendant did not fully comply with that part of my Order stating: "Defendant shall make a good faith response not later than two weeks before the Settlement Conference." (6/20/2023 Minute Order).

Plaintiffs' Reply expands upon their theme that Defendant never responded to their demand of $10 million. The fact that Plaintiffs submitted their demand to Defendant more than once is not the issue– as the Reply contends.

What matters, as further discussed herein, is that Plaintiffs did not comply with the part of my order that applied to *them*, namely, that they make a *reasonable, good faith* demand, which would have triggered the Defendants' obligation to make a "reasonable, good faith" counteroffer. (*id*. (emphasis added)).

3

Defendant's attorney Mr. Devine confirmed that he received Plaintiffs' initial demand. (*Id.* at 4). He explained that Plaintiffs' demand was for $10 million. (*Id.*) Defendant's attorney stated that he called Plaintiffs' counsel on the phone after receiving Plaintiffs' demand. (*Id.*) Defendant's attorney told Plaintiffs' counsel that his client was astounded by the dollar amount. (*Id.*) He indicated that his client would not authorize him to negotiate from Plaintiffs' starting point. (*Id.*) Defendant's attorney explained to Plaintiff's attorney that he calculated the combined three Plaintiffs' lost wages (less mitigating factors) at approximately $125,000 per year since Plaintiffs' 2017 terminations. (*Id.* at 4–5). This brought Defendant's settlement figures to closer to the $750,000 to $800,000 range in total. (*Id.*)

Plaintiffs' counsel explained to me that the amount his clients demanded would compensate them for their economic and non-economic damages. (*Id.* at 5). They also seek punitive damages in their complaint. (*See* Doc. 1).

I am thoroughly familiar with the facts and circumstances of this case. Never in my 44 years as a Federal Judicial Officer has any plaintiff in any variant of an employment discrimination or retaliation case successfully claimed (either individually or collectively) that their losses amounted to $10 million. *See Morgan v. New York Life Ins. Co.*, 559 F.3d 425, 441 (6th Cir. 2009) (remitting jury verdict for a $10 million punitive damage award in an employment discrimination case for violating due process because the damage award was grossly disproportionate to the

---

The fact that Defendant confirmed this during the *ex parte* discussion should come as no surprise. Defendants already stated their position before the *ex parte* discussion. (*See* Tr., 4 ("First of all, the demand is $10 million … I told [counsel] that we would never do anything close to that.").

amount of Plaintiffs' economic losses). I told Plaintiffs' counsel directly that I did not find $10 million to be a reasonable or good faith settlement demand under the circumstances.[4] (Tr. at 6–9).

While it is possible that a jury could return a $10 million verdict, it is not probable. Additionally, a $10 million verdict would likely be subject to a well-founded motion for remitter. *See Morgan*, *supra*. If there were a case in which a jury awarded a plaintiff a relatively equivalent amount, collectively or individually, in similar circumstances, Plaintiffs have not cited it.

I gathered that once the parties encountered this stage of their negotiations, they stopped communicating with one another about settlement. They were simply too far apart for further communication to be productive.

At the October 2, conference, I explained to them that one or both of them should have let me know much sooner. (*See* note 3, *supra*; *see* Tr. at 16–17 ("I understand that, but it's still six months has gone by and nothing has happened. … That will never happen again, folks, okay? End of discussion on that. This case has gone on way too long."). Instead, they waited for several months to pass, which is not acceptable. Either shortly before, or at the October 2 conference, I learned of the log jam.

---

[4] Additionally, I note that the economic losses are also in part due to the delays I encountered in trying to move this case along (including, but not limited to, the five-month delay from Plaintiffs' unsuccessful attempt to appeal) and multiple-month delays currently caused by my acquiescence and counsels' repeated requests for continuation of the settlement conference.

To the extent that Plaintiffs' counsel sought or acquiesced in those extensions, the ever-mounting economic losses are attributable to his ongoing—and through last month, continuing—failure to demand that a settlement conference be scheduled and take place much sooner.

I acknowledge my own inattention to the passage of time contributed to that circumstance.

As I stated at the conference, "that won't happen again." (Tr. at 16–17).

I explained that, if settlement discussions were indeed at the impasse both sides described, the next step in this case is dispositive motion briefing and a trial. I indicated I would set those dates on an expedited briefing schedule partially to make up for the time lost already. (*Id*.)

At this point in the conference, Plaintiffs' counsel expressly requested that I hold an *ex parte* settlement discussion with Defendant's counsel. (*Id*. at 21). Plaintiffs' counsel believed that Defendant's counsel could be candid with me about what they believed the case is worth.[5] (*Id*.) I granted Plaintiffs' counsel's express request and briefly met with Defendant's counsel to better understand his client's settlement position. (*Id*.)

Plaintiffs' counsel made it clear that he had already explained his client's settlement position in detail to Defendant's counsel multiple times. (*Id*. at 3). He claimed that Defendant's counsel was solely responsible for the log jam. (*Id*. at 3–4).

After concluding my *ex parte* conversation with Defense counsel, I explained that I understood from the *ex parte* discussion that Defendant's counsel did not have authority to settle and further discussion would likely be unproductive. (*Id*. at 24). Accordingly, I told the parties I

---

[5] Plaintiffs' counsel's motion calls me to task for undertaking—allegedly— *sua sponte* to have an *ex parte* discussion with defense counsel. (*See*, *i.e.*, "As the Court will recall, it eventually chose to separate the parties and spoke with defense counsel for approximately 15 minutes; but declined to speak with plaintiffs' counsel *ex parte*, at all. Plaintiffs are deeply concerned." (Doc # 90, PageID # 864).) The *record expressly shows*: "I—I'd like them to have the opportunity to candidly *ex parte* tell the Court what they think the case is worth, and then the Court can do the same with me, and maybe—" (Tr. at 21).

Mr. Leizerman errs when he so casually, wrongly, and wrongfully accuses me of engaging improperly in a practice which I absolutely and regularly abjure.

This is especially so when he uses my alleged misconduct as a springboard for seeking my recusal on the basis that his clients are apprehensive about my impartiality. They have no cause to be, just as he has no cause to make such accusation.

would finally lift the stay and get the case back on schedule. Plaintiffs' counsel did not object. (*Id.* at 24–25).

Accordingly, I granted leave for Defendant to file a motion for summary judgment and I set a briefing schedule.[6] (*See* 10/2/2023 Minute Order). I also ordered Plaintiffs to provide Defendant with a good faith settlement demand by November 15, 2023. (*Id.*).

## Discussion

Plaintiffs now bring their motion to stay the briefing schedule and to transfer the case to another of my colleagues in the Northern District of Ohio, Western Division. (Doc # 90). I interpret this motion (though Plaintiffs' counsel declines to caption it as such) as one for either recusal or reconsideration.[7]

---

[6] The timetable in that Order called on Defendant to file its motion on or before October 23, 2023. It has done so. Despite the manifold failings of Plaintiffs' pending motion, I herewith *sua sponte* extend the date for his opposition to Defendants' motion until Wednesday November 22, 2023 by 12:00pm. Correspondingly, Defendants' reply is now due Friday December 11, 2023.

In Plaintiffs' counsel's reply to his current recusal motion, he complains that I did not concurrently set a timetable for him to file a counter-motion for summary judgment. (Doc # 93.)

That is so, because Plaintiffs' counsel remained silent when he should have spoken up.

Now that I am aware of his desire, he has leave to file his counter-motion concurrently with his opposition to Defendant's motion—i.e., November 22, 2023 by 12:00pm. Defendant's reply and opposition to the counter-motion will be due on December 11, 2023. Plaintiffs sur-reply is due on December 22, 2023.

[7] As is likely well-known to counsel, I strongly disfavor motions for reconsideration. (*See* Carr, J. *Civil Case Preferences* (https://www.ohnd.uscourts.gov/content/judge-james-g-carr)). This does not mean that I never grant motions for reconsideration when they are appropriately brought, however. If counsel believed in good faith that I committed a legal error in my discretion to place the case back on track for trial, or that I should not have ordered them to make another settlement demand, a motion for reconsideration would have been the appropriate vehicle for raising those issues.

Under Local Rule 7.1(c), all motions must include a "memorandum of the points and authorities on which it relies in support of the motion." Plaintiffs' counsel's motion fails in this regard. The motion does not cite to any legal authority for the relief it seeks. Plaintiffs' counsel does not cite to any relevant cases or comparators on which to base a recusal or reconsideration. Nor does Plaintiffs' counsel provide any factual basis, through his own affidavit or that of his clients, or otherwise, for the alleged suppositions and suspicions regarding the content of the *ex parte* discussion conducted *at Plaintiffs' counsel's express request*.

Indeed, as noted above (*see* note 4), Plaintiffs recusal request is based on a misrepresentation of the facts as to what occurred before and during the conference.

In the motion, Plaintiffs' attorney claims, that Plaintiffs express "deep concern" and "distress" about my *ex parte* session I held at the express request of their attorney. (Doc # 90, PageID # 867). Plaintiffs' counsel further claims that his clients are concerned "that they have very little optimism for their chances of prevailing against Defendant's forthcoming summary judgment." (*Id.*). He also asserts that his clients are concerned that I am "using the threat of summary judgment to bludgeon Plaintiffs into settlement on the Court's terms and that the Court will find cause to dismiss their case…"[8] (*Id.*). Such alleged but improperly unsupported

---

[8] I take exception to Plaintiffs' attorney's statements that Defendant has "convinced" me to order Plaintiffs to make another settlement demand, and that I have threatened to use summary judgment to "bludgeon Plaintiffs into settlement on the Court's terms." I do not work that way. Indeed, as I routinely explain in settlement conferences, as I did in this case, that it does not affect me whether a case settles or not. ("I get paid no matter what I do, so I'm not peeved. I'm just saying I don't see any hope that this case is going to get settled." (Tr. at 11).).

Whether, on the forthcoming briefs regarding summary judgment, I might find cause to grant Defendants' motion remains entirely to be seen. That, of course, depends on the undisputed facts and applicable law. If Plaintiffs conclude that I err in my decision, whatever it may be, they can and will appeal. This is the way the judicial system should—and does—work.

expressions, made by a client to his attorney, are, as suggested above, not evidence. *See e.g.,* *United States v. Bailey*, 547 F. App'x 756, 761–62 (6th Cir. 2013) (indicating that a lawyer's statements and arguments are not evidence). The proper way for an attorney to let a Court know what a client believes is to attach a client's affidavit to any motion seeking relief on the basis of such belief. Thus, these alleged apprehensions are without legal significance—just like any assertions by an attorney that the record does not support. (*See, e.g.*, Rule 56's requirement that a party must support factual assertions by materials in the record, Rule 11(b)'s requirement that factual contentions in motions and other filings "have evidentiary support.").

As counsel well-knows, Federal Rule of Civil Procedure 11(b) requires that, when presenting a motion to the Court, counsel certifies that, to the best of his knowledge, the "legal contentions are warranted by existing law" and that "the factual contentions have evidentiary support." This motion contains neither law nor evidence-supported facts. Even if Plaintiffs' counsel had complied with Rule 11, both with regard to providing appropriate affidavits and citing allegedly applicable case law, this motion would not be well-taken.

_____

That being so, Plaintiffs fail to support their argument that I would grant summary judgment where it is not fully warranted. Certainly, I would not be improperly motivated to do so to avoid having to try the case. The case appears likely to last at least a week in trial. As part of the options available to me as a Senior District Judge, I limit trial of my civil cases to no more than two days, exclusive to voir dire, which customarily the Magistrate Judge performs.

Plaintiffs' motion and reply indicate that perhaps Plaintiffs' clients are not satisfied with my arrangement to transfer cases that go to trial for more than two days to another district judge. They both lament their "deep[] concern" about the inefficiencies this creates on one hand, while, on the other hand, they demand that I transfer the case right now before dispositive motions have been adjudicated. I decline to take up Plaintiffs on their suggestion that I transfer the case now. Moreover, any "inefficiencies" Plaintiffs complain of would not be cured by the additional delay Plaintiffs simultaneously seek, namely, that I "stay the summary judgment proceedings." (Doc # 93, PageID # 1465). Plaintiffs cannot have it both ways.

As to counsel's reassignment request, Wright & Miller explains that there are "two basic situations" that may rise to a level requiring recusal:

> First, improper bias or prejudice may arise when a judge forms opinions of the litigants based on information learned outside the course of judicial proceedings. An opinion so formed is said to stem from an "extrajudicial source." The second and far less common situation in which recusal may be warranted arises when a judge whose information is limited to that revealed during the course of judicial proceedings forms a favorable or unfavorable opinion so extreme that fair judgment seems impossible. This is sometimes known as the pervasive-bias exception to the extrajudicial source doctrine. A judge's expressions of anger or adversity toward a litigant in the courtroom, unless based on an extra-judicial source, do not constitute the type of partiality calling for disqualification.[9]

11 Federal Practice and Procedure (Wright & Miller) § 2922 (3d. ed., April 2023). Plaintiffs' attorney does not argue that either of these circumstances apply here. In any event, neither situation is present here.

 To summarize what transpired at the October 2, 2023 conference, I lifted the stay and put the case back on track for trial. Had the parties diligently informed me of their impasse earlier, I would have done so months ago. My doing so now does not relieve Defendant of its burden under Rule 56. Nor are Plaintiffs, who express that they are not concerned about the merits of their case (*id.*) restricted from opposing such a motion.

Again, I decline to be faulted for not doing something that I was not asked to do because Plaintiffs' counsel failed to make a request that other counsel routinely make in similar circumstances.

---

[9] My comments to Plaintiffs' attorney about his demand being excessive were not made in either anger or adversity. Under the circumstances, my remarks were an accurate statement of the fact of the matter. Moreover, I again remind counsel that I did as he expressly asked—to speak *ex parte* with his opposing counsel.

Lastly, I note that Plaintiffs expressed a reluctance to comply with my Order that they submit a good faith settlement demand to Defendant by November 15, 2023. (*Id.*) They argue that compliance with my Order requires them to "bid against themselves." (*Id.*) Under the circumstances—where counsel's opening demand was so excessive and in all foreseeable likelihood is a figure that no verdict could likely ever meet, I cannot fault Defendant for declining to negotiate. To date, there not having been a reasonable, good faith demand on the part of Plaintiffs' counsel, Defendant's counsel is under no obligation to go first.

## Conclusion

Accordingly, given these circumstances, I am obligated to put the case back on track for trial, which I have done through my now-amended scheduling order.

The cornerstone on which Plaintiffs' attorney's recusal motion rests is that I held an *ex parte* communication with Defense counsel. I decline to be faulted by Plaintiffs for something I did at their counsel's express request.

In any event, as is also stated here, the law is clear that nothing in the motion justifies my recusal.[10]

---

[10] Though I am, for the reasons stated, of the view that Plaintiffs' motion fails to comply in a most elemental way with the requirements of Rule 11, I neither invite nor desire a defense motion for sanctions under that rule. Simply put, it is high time that the excessive delays that have occurred in this case come to an end.

Once decisional, I will turn my attention as promptly as possible to adjudicating the motions for summary judgment. Whatever result I reach, the case can thereupon proceed wherever next it may be headed.

In doing so, my intent is that which, in 1616, Sir Edward Coke, Chief Justice of the Common Law Bench, stated in reply as to how he would decide a case: "When the case happens I shall do that which shall be fit for a judge to do." (*See* https://en.wikipedia.org/wiki/Edward_Coke (citing Hostettler, John (1997). Sir Edward Coke: A Force for Freedom. Barry Rose Law Publishers)).

It is, therefore,

ORDERED THAT:

1.  Plaintiffs' motion to stay motion practice and to transfer the case for assignment

    within the Western Division of the Northern District is, and hereby be, denied.

SO ORDERED.

*/s/ James G. Carr*
Sr. U.S. District Judge